[958 NE2d 106, 934 NYS2d 72]

In the Matter of CARLOS RUEDA, M.D., Chairman, Department of Psychiatry, Montefiore North Medical Center, Respondent, v CHARMAINE D., Appellant.

Argued September 7, 2011; decided October 18, 2011

**POINTS OF COUNSEL**

*Mental Hygiene Legal Service First Judicial Department*, New York City (*Namita Gupta, Marvin Bernstein, Diane G. Temkin* and *Sadie Zea Ishee* of counsel), for appellant. I. The Appellate Division erred by finding that a non-treating psychiatrist is a proper applicant under Mental Hygiene Law § 9.27. (*New York City Health & Hosps. Corp. v Brian H.*, 51 AD3d 412; *Matter of M.B.*, 6 NY3d 437; *Matter of Marie H.*, 25 AD3d 704; *Snell v Apfel*, 177 F3d 128; *Bailey v Pataki*, 636 F Supp 2d 288; *Addington v Texas*, 441 US 418.) II. Erroneously admitting an individual under Mental Hygiene Law § 9.27 instead of Mental Hygiene Law § 9.39 deprives the individual of her statutory and

due process rights to a 15-day retention and Mental Hygiene Law § 9.39 hearing. (*Morgan v City of New York*, 32 AD3d 912; *Vitek v Jones*, 445 US 480; *Matter of Pilgrim Psychiatric Ctr. [Christian F.]*, 197 AD2d 204; *Addington v Texas*, 441 US 418; *Matter of Smith v Butler Hosp.*, 144 Misc 2d 554; *Project Release v Prevost*, 551 F Supp 1298, 722 F2d 960; *Matter of Nancy H.*, 177 Misc 2d 30; *Matter of Gladstone*, 143 Misc 2d 646; *New York City Health & Hosps. Corp. v Brian H.*, 51 AD3d 412; *Matter of Boggs v New York City Health & Hosps. Corp.*, 132 AD2d 340, 70 NY2d 972.)

*Abrams, Fensterman, Fensterman, Eisman, Greenberg, Formato & Einiger, LLP*, Lake Success (*Eric Broutman* of counsel), for respondent. I. A plain reading of Mental Hygiene Law § 9.27 indicates that an emergency room psychiatrist is "either supervising the treatment of or treating" a person with mental illness. (*Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475; *A.J. Temple Marble & Tile v Union Carbide Marble Care*, 87 NY2d 574; *Cole v Mandell Food Stores*, 93 NY2d 34; *People v Cruz*, 48 NY2d 419; *People v Duggins*, 3 NY3d 522.) II. The legislative history of Mental Hygiene Law § 9.27 contemplates expanding the list of applicants beyond those who have a close relationship with the patient. III. Concluding that an emergency room psychiatrist may be an applicant pursuant to Mental Hygiene Law § 9.27 does not disrupt the statutory scheme. (*People v Finnegan*, 85 NY2d 53, 516 US 919.) IV. Charmaine D.'s due process rights were not offended by her admission pursuant to Mental Hygiene Law § 9.27. (*Algarin v New York City Dept. of Correction*, 460 F Supp 2d 469; *Foucha v Louisiana*, 504 US 71; *Addington v Texas*, 441 US 418; *O'Connor v Donaldson*, 422 US 563.)

*Eric T. Schneiderman, Attorney General*, Albany (*Kate H. Nepveu, Barbara D. Underwood, Andrea Oser* and *Peter H. Schiff* of counsel), for New York State Office of Mental Health, amicus curiae. When a patient meets the standards for admission provided in both Mental Hygiene Law § 9.27 and § 9.39, physicians have discretion to decide which admissions statute best serves the needs of the patient and the public. (*New York City Health & Hosps. Corp. v Brian H.*, 51 AD3d 412; *Matter of Thomas G.*, 50 AD3d 1139; *Matter of Boggs v New York City Health & Hosps. Corp.*, 132 AD2d 340; *Project Release v Prevost*, 722 F2d 960.)

*Moritt Hock & Hamroff LLP*, Garden City (*Seth P. Stein* and *Robert L. Schonfeld* of counsel), for New York State Psychiatric

Association, Inc., amicus curiae. I. An emergency room psychiatrist can apply for the retention of a person with mental illness pursuant to Mental Hygiene Law § 9.27. II. The Appellate Division, First Department, majority decision best preserves the ability of psychiatrists to treat patients. (*Youngberg v Romeo*, 457 US 307; *Mark G. v Sabol*, 93 NY2d 710; *Matter of North Shore Univ. Hosp. v Rosa*, 194 AD2d 727; *P.C. v McLaughlin*, 913 F2d 1033.)

*Michael A. Cardozo, Corporation Counsel*, New York City (*Drake A. Colley* and *Edward F.X. Hart* of counsel), for New York City Health and Hospitals Corporation, amicus curiae. I. The legislative history of Mental Hygiene Law § 9.27 demonstrates that the Legislature intended to expand the role of those who could apply for a patient's admission to a hospital. (*Project Release v Prevost*, 551 F Supp 1298, 722 F2d 960.) II. If adopted, appellant's position would endanger the community by preventing the admission of dangerous mentally ill individuals and would render care and treatment burdensome in portions of the state. (*Matter of Moran Towing & Transp. Co. v New York State Tax Commn.*, 72 NY2d 166; *Violandi v City of New York*, 184 AD2d 364; *Lee v City of New York*, 162 AD2d 34.)

### OPINION OF THE COURT

SMITH, J.

We hold that an emergency room psychiatrist was "supervising the treatment of or treating" a patient within the meaning of Mental Hygiene Law § 9.27 (b) (11), and so had standing to seek an involuntary commitment of the patient pursuant to section 9.27. The psychiatrist was not required to resort to the emergency procedure contained in Mental Hygiene Law § 9.39.

## I

Charmaine D. was brought to the emergency room at Jacobi Medical Center. Dr. Amita Shetty, an attending psychiatrist, found Charmaine to be acutely agitated, trying to take her clothes off, and in need of medications and restraints. The doctor learned that Charmaine had a history of bipolar disorder and had been hospitalized four times before. Dr. Shetty concluded that Charmaine was "currently paranoid, grandiose with decreased insight and judgment, poor impulse control, unable to care for self and a potential danger to self" and applied to have her admitted involuntarily to a hospital pursuant to Mental Hygiene Law § 9.27.

Dr. Shetty's application was accompanied by certificates of two other doctors who had examined Charmaine. The patient was transferred (apparently for insurance reasons) to Montefiore North Medical Center, where she was admitted after a fourth doctor confirmed that she needed involuntary care and treatment.

Five days after Charmaine was admitted to Montefiore, petitioner, the director of the psychiatry department at that hospital, applied to Supreme Court for an order that she be retained for 30 days. Charmaine moved to dismiss the retention proceeding, arguing, among other things, that her original commitment was defective because Dr. Shetty was not a proper applicant under Mental Hygiene Law § 9.27. She argued that the only option available to the Jacobi emergency room doctors was to seek her commitment under Mental Hygiene Law § 9.39.

Supreme Court denied the motion to dismiss and ordered Charmaine retained. The Appellate Division, with two Justices dissenting, affirmed (*Matter of Rueda v Charmaine D.*, 76 AD3d 443 [1st Dept 2010]).* Charmaine appeals to us as of right, pursuant to CPLR 5601 (a).

As we understand Charmaine's position, she makes two distinct, though related, arguments: that an emergency room psychiatrist-patient relationship is not enough to create standing for the psychiatrist to seek an involuntary commitment under Mental Hygiene Law § 9.27 (b) (an argument rejected by all five Appellate Division Justices); and that Dr. Shetty could proceed only under Mental Hygiene Law § 9.39, not section 9.27 (an argument the Appellate Division dissenters accepted). We reject both arguments, and affirm the Appellate Division's order.

## II

■ Mental Hygiene Law § 9.27 authorizes the involuntary commitment of mentally ill people who need hospitalization. Standing to apply for a section 9.27 commitment is governed by section 9.27 (b), which lists 11 categories of qualified applicants, including "any person with whom the person alleged to be mentally ill resides" (§ 9.27 [b] [1]); the allegedly mentally ill

---

* The case was moot when it reached the Appellate Division, because the period of retention had expired, but the Appellate Division correctly held that this case justifies application of the mootness exception for important and recurring questions (*Mental Hygiene Legal Servs. v Ford*, 92 NY2d 500, 505-506 [1998]).

person's parent, spouse, sibling or child, "or the nearest available relative" (§ 9.27 [b] [2]); "the director of community services . . . of the city or county in which any such person may be" (§ 9.27 [b] [5]); and the director of a hospital where the person is hospitalized (§ 9.27 [b] [6]). Petitioner here claims that Dr. Shetty had standing under Mental Hygiene Law § 9.27 (b) (11), which authorizes an application by "a qualified psychiatrist who is either supervising the treatment of or treating such person for a mental illness in a facility licensed or operated by the office of mental health." We agree with petitioner.

As a matter of ordinary English, it is possible to read the words "treatment" and "treating" either broadly, to include the relatively brief physician-patient relationship that exists in an emergency room, or more narrowly to exclude it. Charmaine argues for the narrower reading, interpreting section 9.27 (b) to require that all applicants have or supervise a close relationship with the person proposed for commitment; she says that only a psychiatrist involved in the "prior treatment" of the person should qualify. But we think the broader reading of the statute will better serve its purpose.

The list of proposed applicants in section 9.27 (b) seems to us a legislative attempt to describe categories of people likely to have a sincere and legitimate interest in the well-being of the person they are seeking to have committed. The relationship need not be an intimate one; a local director of community services, for example, may not know the person in question at all. The main point of the list, as we interpret it, is to exclude those whose lack of a significant relationship with the allegedly mentally ill person might create a suspicion that they are simply meddling, or acting out of spite. Emergency room psychiatrists are unlikely so to abuse the section 9.27 commitment process. The statute (which we describe more fully in section III below) contains other safeguards: an application under section 9.27 must be accompanied by two other physicians' certifications (Mental Hygiene Law § 9.27 [a]), and a physician who is a member of the psychiatric staff of the receiving hospital must confirm that the patient needs involuntary care and treatment (Mental Hygiene Law § 9.27 [e]). These provisions should be adequate to protect against ill-founded attempts at commitment.

Charmaine relies on a regulation of the Department of Mental Hygiene, 14 NYCRR 72.3 (g), which defines the term "service" to include several categories, including "treatment," which is distinguished from such other services as "examination,"

"diagnosis," and "care." "Treatment" is defined in the regulation as "the service of applying the techniques of professional disciplines such as psychiatry, psychology, social work, or psychiatric nursing in a planned program to improve the functional competence of mentally disabled persons" (14 NYCRR 72.3 [g] [4]). But we see no reason to believe that the Legislature had this regulatory definition in mind when it used the words "supervising the treatment of or treating" in Mental Hygiene Law § 9.27 (b) (11). The regulation is expressly limited to its immediate context: it is contained in 14 NYCRR chapter IV, part 72, whose title is "Definitions Pertaining to This Chapter." To apply it in the different context of section 9.27 (b) (11) would require courts to examine minutely what happened in an emergency room, in order to decide whether it was part of a "planned program" to improve the patient's "functional competence." We do not read the legislation to require any such inquiry.

### III

Charmaine's second argument is that she could have properly been committed only under Mental Hygiene Law § 9.39. The Appellate Division dissent accepted this argument, concluding that a section 9.27 commitment is not available where the prerequisites of section 9.39 are met. The argument requires us to examine the two sections in more detail.

Section 9.27 is entitled "Involuntary admission on medical certification." It provides a method by which the director of a hospital "may receive and retain therein as a patient any person alleged to be mentally ill and in need of involuntary care and treatment" (Mental Hygiene Law § 9.27 [a]). An admission under section 9.27 requires the execution of three separate documents: an "application" and "certificates of two examining physicians" (Mental Hygiene Law § 9.27 [a], [b]). It also requires that, when the patient is brought to a hospital, the director of that hospital "shall cause such person to be examined forthwith by a physician who shall be a member of the psychiatric staff of such hospital other than the original examining physicians," and authorizes admission "if such person is found to be in need of involuntary care and treatment" (Mental Hygiene Law § 9.27 [e]). Thus in the normal case—as in this one—four people must agree that involuntary admission is appropriate if the section 9.27 procedures are used.

The substantive prerequisite for admission under section 9.27—a need for "involuntary care and treatment"—is defined in Mental Hygiene Law § 9.01:

" 'in need of involuntary care and treatment' means that a person has a mental illness for which care and treatment as a patient in a hospital is essential to such person's welfare and whose judgment is so impaired that he is unable to understand the need for such care and treatment."

A person committed under section 9.27 can be retained without court authorization for up to 60 days; a court order is necessary after that, unless the patient remains in the hospital voluntarily (Mental Hygiene Law § 9.33 [a]). At any time during the 60-day period, the patient or someone representing him or her may apply for a hearing "on the question of need for involuntary care and treatment" (Mental Hygiene Law § 9.31 [a]), which must be held no more than five days after a notice of request for a hearing is received (Mental Hygiene Law § 9.31 [c]). If it is determined at the hearing that the patient "is not mentally ill or not in need of retention," the court shall order his or her release (id.).

Mental Hygiene Law § 9.39 is entitled "Emergency admissions for immediate observation, care, and treatment." It is apparent from this title, and from several other provisions of section 9.39, that it is designed for emergency situations, in which section 9.27's procedures might not be adequate to protect the patient or the public. Thus, section 9.39 can be employed only where a person is "alleged to have a mental illness for which *immediate* observation, care, and treatment in a hospital is appropriate" (Mental Hygiene Law § 9.39 [a] [emphasis added]). Section 9.39 can be employed only where the alleged mental illness "is likely to result in serious harm" to the mentally ill person or to others (id.). No such requirement is found in section 9.27. "Likelihood to result in serious harm" is precisely, and stringently, defined:

" 'Likelihood to result in serious harm' as used in this article shall mean:

"1. substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or

"2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable

fear of serious physical harm" (Mental Hygiene Law § 9.39 [a]).

Designed as it is for special cases where "immediate" action is necessary to prevent harm, section 9.39 requires procedures less elaborate than those of section 9.27. Section 9.39 does not require an "application," or the pre-admission certification of two physicians; a person shall be admitted under section 9.39 "only if a staff physician of the hospital upon examination of such person finds that such person qualifies under the requirements of this section" (Mental Hygiene Law § 9.39 [a]). The patient can be retained no more than 48 hours unless another physician, who is a member of the hospital's psychiatric staff, confirms the finding (*id.*). A person committed under section 9.39, like one committed under section 9.27, may apply to a court on five days' notice to be released, but that person can be retained under section 9.39 if the court finds "reasonable cause to believe" that the requirements of the section are met (*id.*).

In keeping with its emergency nature, a section 9.39 commitment is good only for 15 days. The patient can be retained against his or her will after that time only "pursuant to the provisions governing involuntary admission on application supported by medical certification"—i.e., pursuant to section 9.27 (Mental Hygiene Law § 9.39 [b]).

In sum, section 9.27 describes the general procedure for involuntary hospital admissions; section 9.39, a special procedure for emergencies. Charmaine's theory that she could be committed only under section 9.39, not section 9.27, seems to us inconsistent with the relationship between the two sections. It does not make sense that those seeking commitment should be *required* to use the emergency procedure where the non-emergency procedure is adequate.

Indeed, it is ironic that Charmaine, having argued that the list of persons permitted to file an "application" under section 9.27 should be read restrictively to exclude Dr. Shetty, also argues that the doctor should have proceeded under section 9.39, which does not require an "application" at all. To insist that commitment be pursued under the section having less extensive procedural requirements does not advance the goal of assuring that the rights of those alleged to be mentally ill are fully protected. Also, to accept Charmaine's argument would create strange results in the case of mentally ill people who clearly meet the substantive standard for commitment under section 9.27 (that hospitalization "is essential to such person's

welfare") but might or might not meet the more stringent standard of section 9.39, which requires a "substantial risk of physical harm," as shown by suicide threats or dangerous conduct. Under the theory of the Appellate Division dissent, a section 9.27 commitment must fail if the patient's problems are found to be so severe that immediate commitment is necessary.

Accordingly, the order of the Appellate Division should be affirmed, without costs.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

Order affirmed, without costs.