Matter of Colihan v State of New York (2022 NY Slip Op 07485)

Matter of Colihan v State of New York

2022 NY Slip Op 07485

Decided on December 29, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 29, 2022

533850
[*1]In the Matter of Michael Colihan, Appellant,
v
State of New York et al., Respondents.

Calendar Date:November 17, 2022

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Ceresia and McShan, JJ.

John J. Hayes, New York City, for appellant.
Letitia James, Attorney General, Albany (Laura Etlinger of counsel), for respondents.

Garry, P.J.
(1) Appeal from a judgment of the Supreme Court (Adam W. Silverman, J.), entered July 19, 2021 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Department of Health denying petitioner's request to remove a record from certain databases, and (2) motion to strike portions of petitioner's reply brief.
Under federal law, individuals who have been committed to a mental institution are prohibited from purchasing or possessing any firearm (see 18 USC § 922 [d] [4]; [g] [4]; see also 18 USC § 921 [a] [3]). The National Instant Criminal Background Check System (hereinafter NICS) was established so that firearms dealers and the authorities may search the backgrounds of prospective firearm purchasers and firearm owners for such disqualifying information (see 18 USC § 922 [t]; 34 USC § 40901). Mental Hygiene Law § 7.09 (j) (1), in turn, directs respondent Commissioner of Mental Health, in cooperation with other state agencies, to transmit to NICS the names and nonclinical identifying information of individuals who have been involuntarily committed to a hospital pursuant to certain statutory authority, including under Mental Hygiene Law article 9. One mechanism for transmitting that information is the Person-Based Electronic Response Data System (hereinafter PERDS), a secure Health Commerce System portal maintained by respondent Department of Health (hereinafter DOH). Once the foregoing information is submitted to PERDS, it is automatically transmitted to the Office of Mental Health (hereinafter OMH) and then, by further automated process, to NICS.
On July 11, 2017, petitioner was transported by ambulance to Richmond University Medical Center and admitted to the hospital's comprehensive psychiatric emergency program pursuant to Mental Hygiene Law § 9.40, which authorizes emergency retention of up to 72 hours of a person "alleged to have a mental illness for which immediate observation, care and treatment in such program is appropriate and which is likely to result in serious harm to the person or others" (Mental Hygiene Law § 9.40 [a]; see generally Mental Hygiene Law § 31.27). The physician who examined petitioner determined that petitioner was suffering from major depressive disorder and alcohol use disorder. Petitioner was later examined by a second physician who agreed that continued retention pursuant to Mental Hygiene Law § 9.40 was warranted (see Mental Hygiene Law § 9.40 [b], [c]). On July 14, 2017, a physician determined that petitioner was still a risk to himself and required further inpatient stabilization. Petitioner's retention was therefore converted to an emergency admission under Mental Hygiene Law § 9.39 (see Mental Hygiene Law § 9.40 [e]), which authorizes retention of a person in such circumstance for up to 15 days (see Mental Hygiene Law § 9.39 [a] [1]). Petitioner was transferred to the hospital's inpatient psychiatric unit, and another physician [*2]later confirmed the need for continued retention (see Mental Hygiene Law § 9.39 [a] [2]). Petitioner was ultimately discharged on July 19, 2017. Despite the conversion of his legal status on July 14, the hospital's records through July 19 continued to utilize July 11 as petitioner's admission date. On July 21, the hospital conducted a follow-up assessment of petitioner at his home, the records for which erroneously listed July 21 as a date of admission, rather than a date of service.
In January 2020, the hospital submitted information to PERDS concerning two involuntary commitments of petitioner — one on July 11, 2017 and one on July 21, 2017.[FN1] According to petitioner, he was thereafter prohibited from purchasing a firearm in Pennsylvania and his concealed firearm permit in Utah was suspended. Petitioner ultimately contacted OMH's Office of NICS Appeals to inform them that the records of two involuntary commitments were untrue and demand the inaccuracies be corrected. OMH requested petitioner's complete medical records from the hospital. In the interim, petitioner commenced the instant proceeding to compel respondents to correct their records. Upon receipt of petitioner's complete hospital records, OMH referred the investigation to DOH, which is responsible for activities under the NICS Act Record Improvement Program. The program's principal investigator confirmed with the hospital that the record of a July 21 admission was erroneous, and the hospital immediately expunged same from the relevant databases. The investigator further confirmed that petitioner's initial retention for observation on July 11 was converted to an admission pursuant to Mental Hygiene Law § 9.39 on July 14. Viewing emergency admissions pursuant to Mental Hygiene Law § 9.39 as involuntary, DOH determined that the record of a July 2017 confinement was properly submitted to PERDS and, thus, NICS.
Respondents moved, pre-answer, to dismiss the amended petition [FN2] on four grounds: statute of limitations; failure to exhaust administrative remedies; failure to state a cause of action; and, as to respondent State of New York, improper party. Supreme Court rejected the limitations and exhaustion defenses, and, based upon petitioner's objection to the consideration of the merits at the early procedural stage, reserved decision on the remaining branches of respondents' motion and permitted the parties to submit further relevant filings. Respondents accordingly joined issue, and the parties submitted additional memoranda of law in support of their respective pleadings. In doing so, petitioner set forth several constitutional claims for the first time, including a facial and as-applied challenge to respondents' system of reporting to NICS. Upon review of the additional filings, Supreme Court dismissed the proceeding, concluding that mandamus to compel did not lie as the record of a July 2017 involuntary commitment was not erroneous and rejecting any alleged constitutional violations. Petitioner [*3]appeals.
Initially, respondents' motion to strike portions of petitioner's reply brief is granted to the extent that petitioner raises arguments for the first time in reply. In his opening brief, petitioner argued only that his admission on July 11, 2017 pursuant to Mental Hygiene Law § 9.40 was not involuntary and, thus, that he has a clear legal right to the removal of the erroneous record of same. In reply, petitioner asserted what appears to be four additional claims involving due process and his Second Amendment right to keep and bear arms. Apart from being raised for the first time in reply, some of these arguments are also being raised for the first time on appeal. Further, each of these arguments, raising complex constitutional issues, are entirely undeveloped. Although respondents availed themselves of the opportunity to file a surreply with this Court responding to same (see generally Matter of Dusch v Erie County Med. Ctr., 184 AD3d 1168, 1169-1170 [4th Dept 2020]), in their surreply, they urge that petitioner's failure to timely raise these claims has hampered their ability to buttress their defense with the detailed historical analysis that is required to determine the validity of restrictions on the Second Amendment (see generally New York State Rifle & Pistol Assn., Inc. v Bruen, ___ US ___, ___, 142 S Ct 2111, 2128 [2022]). In view of the foregoing, we decline to exercise our discretion to address petitioner's belated claims.
Turning to the claim that is properly before us, as noted, petitioner maintains that his retention pursuant to Mental Hygiene Law § 9.40 on July 11, 2017 was not an involuntary commitment and, thus, respondents are under an obligation to remove the record of an admission on that date. In petitioner's view, regardless of how the July 14, 2017 admission is characterized in terms of voluntariness, it was a second, separate admission and not one that was submitted to NICS. Under CPLR 7803 (1), a petitioner may challenge an administrative body's failure to perform a duty enjoined upon it by law, and petitioner is correct that OMH, upon being made aware that the basis under which a record was made available to NICS does not apply, has a duty to update, correct, modify or remove such record from any database made available to NICS (see 34 USC § 40912 [c] [1] [B] [i]; 14 NYCRR 543.6 [a]). However, relief in the nature of mandamus to compel is an extraordinary remedy that lies only where there is a clear legal right to the relief sought (see Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758 [1991]).
Even assuming, without deciding, that petitioner's emergency retention under Mental Hygiene Law § 9.40 was not a commitment to a mental institution within the meaning of 18 USC § 922, the fact that all forms and records related to petitioner's subsequent Mental Hygiene Law § 9.39 admission continued to utilize July 11, 2017 as petitioner's admission date does not mean that the record [*4]transmitted by respondents, similarly utilizing that date, was of the Mental Hygiene Law § 9.40 retention. Indeed, Mental Hygiene Law § 9.40 (e) requires that, in the circumstance where a retention pursuant to that section is converted into an admission pursuant to Mental Hygiene Law § 9.39, the 15-day retention period authorized by the latter must be calculated from the time that the person was initially registered into the comprehensive psychiatric emergency program. Petitioner has not identified, and we have not discerned, any legal authority prohibiting the use of such registration date for the purposes of an NICS submission. At most, petitioner would be entitled to correction of the date in NICS — relief that he does not request.
We reject any claim that petitioner's Mental Hygiene Law § 9.39 admission was not an involuntary commitment within the meaning of federal law. Federal regulations define "[c]ommitted to a mental institution" as "[a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily," "commitment for mental defectiveness or mental illness" and "commitments for other reasons, such as for drug use" (27 CFR 478.11). "The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution" (27 CFR 478.11).
Courts have consistently understood Mental Hygiene Law § 9.39 to be one of the several sections of that law that authorize involuntary civil commitment (see Matter of George L., 85 NY2d 295, 305 n 3 [1995]; Matter of Gardner v Bassett Med. Ctr.,148 AD3d 1331, 1334 [3d Dept 2017]; Tienken v Benedictine Hosp., 110 AD3d 1389, 1390 [3d Dept 2013]; Matter of Rueda v Charmaine D., 76 AD3d 443, 445-446 [1st Dept 2010], affd 17 NY3d 522 [2011]; Willoughby v Mount Sinai Hosp., 68 AD3d 487, 487 [1st Dept 2009]; see also Olivier v Robert L. Yeager Mental Health Ctr., 398 F3d 183, 188 [2d Cir 2005]; Project Release v Prevost, 722 F2d 960, 966, 972 [2d Cir 1983]). Further, admission pursuant to Mental Hygiene Law § 9.39, with its substantive and procedural protections (see Mental Hygiene Law § 9.39 [a]; Project Release v Prevost, 722 F2d at 972-974), has specifically been found to constitute a formal commitment by "other lawful authority" (27 CFR 478.11; see Phelps v Bosco, 711 F Appx 63, 64-65 [2d Cir 2018]; Escamilla v United States, 2022 WL 2657129, *4-5, 2022 US Dist LEXIS 120508, *15-18 [ED Wis, July 8, 2022, No. 21-C-510]).[FN3]
Petitioner's Mental Hygiene Law § 9.39 admission was based upon the written application and recommendation of a physician, the provision of a notice of status and rights to petitioner and the subsequent confirmation by a staff psychiatrist, and it included treatment for mental illness — manifesting as poor insight and judgment, questionable impulse control and suicidal ideation (see Phelps v Bosco, 711 F Appx at 65). Although petitioner [*5]may have been cooperative with the admission process, such cooperation does not render an admission "voluntary" (Mental Hygiene Law § 9.13; see Escamilla v United States, 2022 WL 2657129 at *5).
Thus, it cannot be said that the record submitted to NICS has no basis (see 34 USC § 40912 [c] [1] [B]; Mental Hygiene Law § 7.09 [j] [1]; 14 NYCRR 543.6 [a]), and petitioner therefore has not demonstrated a clear legal right to the relief sought. Petitioner's remaining contentions, to the extent not expressly addressed herein, have been considered and determined to be without merit, and Supreme Court's dismissal of this proceeding will accordingly not be disturbed. In light of our disposition, we need not consider respondents' alternative ground for a partial affirmance as to respondent State of New York.
Lynch, Reynolds Fitzgerald, Ceresia and McShan, JJ., concur.
ORDERED that the judgment is affirmed, without costs.
ORDERED that the motion to strike is granted, without costs.

Footnotes

Footnote 1: The record does not establish the reason for this delayed reporting.
Footnote 2: The petition was amended to modify the caption only.

Footnote 3: To the extent that petitioner asserts that Bruen altered the meaning of "commitment" under New York's scheme, in our view, Bruen does "'[n]othing . . . to cast doubt on longstanding prohibitions on the possession of firearms by . . . the mentally ill'" (New York State Rifle & Pistol Assn., Inc. v Bruen, 142 S Ct at 2162 [Kavanaugh, J., concurring], quoting District of Columbia v Heller, 554 US 570, 626-627, 626 n 26 [2008]; see also McDonald v Chicago, 561 US 742, 786 [2010]).