Matter of Julie O. (2024 NY Slip Op 00015)

Matter of Julie O.

2024 NY Slip Op 00015

Decided on January 4, 2024

Appellate Division, Third Department

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 4, 2024

CV-22-2354

[*1]In the Matter of Julie O. Cayuga Medical Center, Respondent; Julie O., Appellant.

Calendar Date:November 21, 2023

Before: Garry, P.J., Lynch, Ceresia, Fisher and Powers, JJ.

Sheila E. Shea, Mental Hygiene Legal Service, Albany (Cailin Connors Brennan of counsel), for appellant.
Harris Beach PLLC, Ithaca (Thomas P. Smith of counsel), for respondent.

Lynch, J.
Appeal from an order of the County Court of Tompkins County (Scott A. Miller, J.), entered September 1, 2022, which, in two proceedings pursuant to Mental Hygiene Law article 9, ordered the continued involuntary retention of respondent.
On August 21, 2022, respondent was observed engaging in erratic behavior at a local racetrack, prompting several calls to the police. She was admitted to the behavioral health unit of petitioner Cayuga Medical Center (hereinafter CMC) later that day pursuant to the emergency admission procedures of Mental Hygiene Law § 9.39 (a). On August 25, 2022, respondent demanded a hearing on the need for her continued emergency retention (see Mental Hygiene Law § 9.39 [a] [2]). The next day, CMC notified respondent that it was converting her case to an involuntary admission on medical certification under Mental Hygiene Law § 9.27, submitting certifications from two physicians who averred that she was "mentally ill and in need of involuntary care and treatment" (Mental Hygiene Law § 9.27 [a]). In an affidavit filed on August 30, 2022, respondent's attorney again demanded a hearing under Mental Hygiene Law § 9.39. At the commencement of the hearing on September 1, 2022, counsel for CMC requested a combined hearing addressing both petitioner's emergency status under Mental Hygiene Law § 9.39 and the involuntary admission on medical certification under Mental Hygiene Law § 9.27, while utilizing the more "stringent standard" applicable to a section 9.39 hearing (Matter of Rueda v Charmaine D., 17 NY3d 522, 530-531 [2011]). Respondent objected, arguing that a combined hearing would effectively "dispense[ ] with one of [the] hearings that she[ is] entitled to under the law."[FN1] County Court opted for a combined hearing, reasoning that by utilizing the standard applicable to a section 9.39 admission, respondent would not be prejudiced. At the conclusion of the hearing, the court determined that, at the time of her admission, respondent "presented a substantial and serious risk of harm to herself" and continued to do so. As such, the court concluded that respondent was in need of continued retention. Respondent appeals.
Respondent has been released from CMC and her appeal is moot (see Matter of Mohamed T., 150 AD3d 510, 511 [1st Dept 2017]; Matter of Christine QQ. v Capital Dist. Psychiatric Ctr., 109 AD2d 1048, 1048 [3d Dept 1985], lv denied 65 NY2d 604 [1985]; Matter of Marsha WW. v Capital Dist. Psychiatric Ctr., 103 AD2d 988, 989 [3d Dept 1984]). However, under the circumstances of this case — which raises a novel issue of substantial import that is likely to evade review — we conclude that the mootness exception applies and we will address the appeal (see Matter of Rueda v Charmaine D., 17 NY3d at 526 n; Mental Hygiene Legal Servs. v Ford, 92 NY2d 500, 506 [1998]; see also Matter of Lucas QQ. [Rahman], 146 AD3d 92, 95 [3d Dept 2016]).
Respondent challenges the combined hearing procedure utilized by County Court. To put this dispute [*2]in context, a review of the admission requirements under Mental Hygiene Law §§ 9.39 and 9.27 is warranted. The emergency admission procedures of Mental Hygiene Law § 9.39 apply when a person "is 'alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate' " — i.e., "only where the alleged mental illness 'is likely to result in serious harm' to the mentally ill person or to others" (Matter of Rueda v Charmaine D., 17 NY3d at 529 [emphasis omitted], quoting Mental Hygiene Law § 9.39 [a]). "Likelihood to result in serious harm" means a "1. substantial risk of physical harm to himself [or herself] as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he [or she] is dangerous to himself [or herself], or 2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm" (Mental Hygiene Law § 9.39 [a]).
Because an admission under section 9.39 is "[d]esigned . . . for special cases where immediate action is necessary to prevent harm" (Matter of Rueda v Charmaine D., 17 NY3d at 530 [internal quotation marks omitted]), it "does not require an application, or the pre-admission certification of two physicians," but only the opinion of the examining staff physician that the person qualifies for emergency admission (id. [internal quotation marks omitted]). "The patient can be retained [under this section for] no more than 48 hours unless another physician, who is a member of the hospital's psychiatric staff, confirms the finding" (id.). The patient or a representative may request a hearing on the question of the need for continued confinement under Mental Hygiene Law § 9.39, which must be held "as soon as practicable but in any event not more than five days after such request is received" (Mental Hygiene Law § 9.39 [a]). A commitment under this section is "good only for 15 days," after which continued involuntary retention must be done under the "provisions governing involuntary admission on application supported by medical certification — i.e., pursuant to [Mental Hygiene Law §] 9.27" (Matter of Rueda v Charmaine D., 17 NY3d at 529; see Mental Hygiene Law § 9.39 [b]).
Mental Hygiene Law § 9.27 "provides a method by which the director of a hospital 'may receive and retain . . . as a patient any person alleged to be mentally ill and in need of involuntary care and treatment' " (Matter of Rueda v Charmaine D., 17 NY3d at 528, quoting Mental Hygiene Law § 9.27 [a]). A person in need of "involuntary care and treatment" is one who "has a mental illness for which care and treatment as a patient in a hospital is essential to such person's welfare and whose judgment is so impaired that he [or she] is unable to understand the need for such care and treatment" (Mental Hygiene Law § 9.01). In contrast to an emergency admission under section 9.39, involuntary [*3]retention under section 9.27 requires an " 'application' and 'certificates of two examining physicians' " (Matter of Rueda v Charmaine D., 17 NY3d at 528, quoting Mental Hygiene Law § 9.27 [a], [b]). "A person committed under [this section] can be retained without court authorization for up to 60 days," during which "the patient or someone representing him or her may apply for a hearing" (Matter of Rueda v Charmaine D., 17 NY3d at 529). The hearing must be held "no more than five days after a notice of request for a hearing is received" (id.; see Mental Hygiene Law § 9.31 [c]).
As we understand respondent's position, she maintains that in the context presented — where a patient is admitted on an emergency basis under Mental Hygiene Law § 9.39 and has demanded a hearing, but whose status is converted to an involuntary admission on medical certification under Mental Hygiene Law § 9.27 prior to the hearing — the ensuing hearing must be limited to a section 9.39 format. Respondent emphasizes that she never requested a hearing under section 9.31 to challenge her involuntary admission. By holding a combined hearing, respondent contends that County Court deprived her of her statutory right to demand a later hearing under section 9.31. She further contends that she was entitled to be released on September 1, 2022 when CMC failed to establish an evidentiary basis to retain her under section 9.39, notwithstanding her involuntary admission status. We only partially agree with respondent's arguments.
To begin, Mental Hygiene Law § 9.39 (b) expressly addresses the factual context presented as follows: "If a hearing has been requested pursuant to the [emergency admissions] provisions of [Mental Hygiene Law § 9.39] (a), the filing of an application for involuntary admission on medical certification shall not delay or prevent the holding of the hearing" (emphasis added). The underscored phrase confirms that a section 9.27 conversion does not impede a respondent's right to a prompt hearing under section 9.39. At the same time, we disagree with respondent's assertion that she was entitled to immediate release on September 1, 2022 if CMC failed to satisfy the section 9.39 standard, as we do not believe the Legislature intended that a court ignore the fact that respondent was also being held on an involuntary basis. Had the proof fallen short on the emergency admission, the reality is that respondent's involuntary retention under section 9.27 would have continued (see Mental Hygiene Law § 9.39 [b] [stating that a person may be involuntarily retained beyond the 15-day period applicable to an emergency admission "pursuant to the provisions governing involuntary admission on application supported by medical certification"]).
The further question is whether County Court improperly combined the hearings on September 1, 2022 to conclusively resolve whether respondent was entitled to release that day, assuming the proof fell short under either standard. That question is [*4]resolved by the procedures outlined in Mental Hygiene Law §§ 9.31 (a) and 9.39 (a) (2), which vest in the patient — not the court or hospital — the right to request a hearing under each section. In that regard, we agree with respondent that, because she never requested a hearing under section 9.31, the court erred in holding a combined hearing and she retained the right to later request a hearing under section 9.31.[FN2] On the other hand, had respondent also requested a section 9.31 hearing, we see no reason why a combined hearing could not be held by the court, provided it did so within the applicable statutory deadlines and considered both statutory standards in rendering its decision.
Turning to the substantive analysis, we conclude that County Court properly denied respondent's application for release, as petitioner established by clear and convincing evidence that respondent had a mental illness and, at the time of the hearing, posed a substantial risk of harm to herself (see Mental Hygiene Law § 9.39 [a] [1]). Respondent does not dispute having a mental illness. During the hearing, respondent's treating psychiatrist at CMC testified that she suffered from delusions that led to disorganized public behavior and unsafe decisions, making "her a target for someone to take advantage of or perhaps even to hurt." He opined that she was vulnerable and that it would be unsafe to discharge her on the day of the hearing. This testimony, which the court duly credited, adequately established that respondent's mental illness presented a "substantial risk of physical harm to [herself] as manifested by . . . conduct demonstrating that [she] is dangerous to [herself]" (Mental Hygiene Law § 9.39 [a] [1]). Clear and convincing evidence also supported continued involuntary retention under Mental Hygiene Law § 9.27. Consequently, under the circumstances presented, respondent has not shown that she was prejudiced by the combined hearing procedure utilized. Respondent's remaining contentions have been considered and found lacking in merit. Accordingly, the order should be affirmed.
Garry, P.J., Ceresia, Fisher and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Respondent did not expressly assert that she had not requested a hearing under Mental Hygiene Law § 9.31 regarding the section 9.27 retention.

Footnote 2: The record shows that the hearing was held on Thursday, September 1, 2022, with the expectation that respondent would be released the following Monday. The record does not include her actual release date.