People ex rel. Neville v Monroe (2026 NY Slip Op 50128(U))

[*1]

People ex rel. Neville v Monroe

2026 NY Slip Op 50128(U)

Decided on February 2, 2026

Supreme Court, Rockland County

Tanguay, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 2, 2026
Supreme Court, Rockland County

The People of the State of New York ex rel. Michael D. Neville, Director, Mental Hygiene Legal Service, on behalf of J. M., Petitioner,

againstJanet Monroe, Executive Director, Rockland Psychiatric Center, Respondent.

Index No. XXXXXX/2026

Dorothy Keogh, Esq., New York Attorney General's Office for Respondent; Vincent Lomangino, Esq., Mental Hygiene Legal Services for Petitioner.

Rachel E. Tanguay, J.

On January 28 and 30, 2026, the parties and counsel appeared before this Court in connection with the Petitioner's petition for writ of habeas corpus pursuant to CPLR Article 70, filed on January 16, 2026. Petitioner argues that he should be released from Rockland Psychiatric Center (RPC) immediately on the basis that RPC did not timely file its "Application for Court Authorization to Retain a Patient: Pursuant to Section 9.13 or 9.33 of the Mental Hygiene Law" (Retention Petition), thereby depriving Petitioner of his constitutional due process rights and leaving him illegally detained. He avers that he was involuntarily committed as of November 5, 2025, the date the second of two psychiatrists signed Certifications that Petitioner needed involuntary commitment because he posed a danger to himself or others, and that the Retention Petition was not filed until January 12, 2026. Respondent disagrees, contending that Petitioner was involuntarily committed on November 12, 2025 and that they timely filed the Retention Petition by emailing it to this Court and Petitioner on January 9, 2026, even though it was filed after Court was closed for the day and was not processed and deemed filed until Monday, January 12, 2026.Factual FindingsThis proceeding was held in an unusual fashion, in that no witness testimony was offered by Petitioner and at first, no documents were being offered into evidence. Instead, Petitioner insisted that oral argument was sufficient for the Court to make findings of fact and conclusions of law. The Court explained that it is unable to make legal determinations without knowing the [*2]facts of the case, and that the parties had not stipulated to the factual allegations set forth in Petitioner's petition. Thus, the parties either needed to stipulate to facts, or evidence needed to be introduced to support the position the Petitioner was taking with respect to the facts. Petitioner insisted that the Court could make findings based upon the documents that were marked as exhibits annexed to his petition, but the Court reminded Counsel that exhibits to petitions are not competent evidence at a hearing unless they are either: (1) self-authenticating; (2) offered through a witness who can lay the proper foundation; or (3) stipulated into evidence by the adverse party. It was at that point that Respondent stipulated to Exhibits A and C to Petitioner's petition being received into evidence.[FN1]

It is unclear how Petitioner arrived at the Central New York Psychiatric Center or when, as no evidence was offered to that effect. Instead, the Court must rely on the two exhibits in evidence, and nothing else, in making its findings. Exhibit A is the "Application for Involuntary Admission on Medical Certification: Section 9.27 Mental Hygiene Law". The Applicant, Dr. Dill, the Executive Director of the Central New York Psychiatric Center, signed the "Application for Admission" in "Part A" on November 7, 2025. "Part B: Psychiatrist's Confirmation of Need for Involuntary Care and Treatment in a Hospital" was signed by an unknown individual on November 12, 2025 at 10:00 a.m. There are two certifications from two independent psychiatrists annexed to the application. Dr. Pajeria signed a Certification that Petitioner required involuntary care and treatment in a hospital because he posed a substantial threat of harm to himself or others on November 5, 2025 at 2:00 p.m. Dr. Rabbi also signed a Certification that Petitioner required involuntary care and treatment in a hospital because he posed a substantial threat of harm to himself or others on November 4, 2025 at 3:30 p.m. The final page of the document consists of a "Notice of Status and Rights—Involuntary Status (to be given to a patient at the time of admission or conversion to involuntary status)". According to this form, Petitioner was given a copy of this form on November 12, 2025, the date of his involuntary admission to the hospital pursuant to MHL § 9.27.
Exhibit C in evidence is Respondent's "Application for Court Authorization to Retain a Patient: Pursuant to Section 9.13 or 9.33 of the Mental Hygiene Law" seeking to retain Petitioner in RPC. The Application states that Petitioner's admission date was "11-12-2025" and that the expiration of the last order was "01-10-2026"; the Application was signed on January 2, 2026 by Dr. Hamilton, Clinical Director. There is a stamp in the lower left-hand corner of the first page that reads "RECEIVED Mental Hygiene Legal Service, January 12, 2026, Second Judicial Department, Rockland Psychiatric Center". A "Notice of Application for Court Authorization to Retain a Patient" indicates that notice of this application was personally delivered to Petitioner on January 2, 2026. A "Certification of Service of Notice (Mental Illness)" evidences that the Director of RPC, Dr. Hamilton, personally delivered to Petitioner and mailed the Application for [*3]retention to Mental Hygiene Legal Services on January 2, 2026.
Conclusions of Law
Petitioner provided the Court with three case citations in support of his arguments: People ex rel. Delia v. Munsey, 26 NY2d 124 (2015); Krisleidy C., 2018 NYLJ LEXIS 2428 (Sup. Ct. Kings Co. 2018); Lopez v. Perez, 194 AD2d 467 (1st Dept. 1993). He contends that these cases support his position that if the hospital fails to take proper and timely action to retain him involuntarily in the hospital, the Court must grant his application for release under CPLR Article 70. The Court agrees that these cases support that premise; however, when Petitioner brings such an application for relief, he must demonstrate that the hospital in fact failed to act timely and properly. In Delia, the Court of Appeals noted that the hospital "conceded that it had erroneously retained [the petitioner] without a court order for approximately six weeks . . . ." 26 NY3d at 128 (brackets and ellipses added). Thus, there was no dispute concerning that salient fact. Here, Respondent maintains its position that it complied with all relevant statutory timeframes in committing Petitioner involuntarily to the hospital and subsequently seeking his retention.
In his petition for relief, Petitioner states that "on November 12, 2025, [he] was admitted on Involuntary Status pursuant to Mental Hygiene Law ("MHL") section 9.27 to RPC . . . ." (Petition for Writ of Habeas Corpus Pursuant to CPLR Article 70 at ¶ 3)(ellipses added). He also alleges that the "2PC for [Petitioner] expired on or about January 4, 2026." Id. at ¶ 7 (brackets added). During summation, Petitioner argued that his involuntary commitment began on November 5, 2025, the date the second psychiatrist signed a Certification that Petitioner was in need of involuntary commitment, not November 12, 2025, the date of admission to the hospital as an involuntary patient. However, Petitioner provided no statutory or other authority to the Court to support that contention. No evidence was adduced to the Court as to when Petitioner first presented to the hospital, and why. There is no evidence in the record explaining why one psychiatrist examined Petitioner on November 4, 2025 and the second psychiatrist examined him on November 5, 2025, but the application for involuntary hospitalization was not submitted until November 7, 2025 and ultimately confirmed and approved on November 12, 2025. Thus, the Court must determine whether this timeline was in conformity with statutory time frames established in the Mental Hygiene Law.
MHL § 9.27 states in pertinent part:
(a) The director of a hospital may receive and retain therein as a patient any person alleged to be mentally ill and in need of involuntary care and treatment upon the certificates of two examining physicians, or upon the certificates of an examining physician and a psychiatric nurse practitioner. Such certificates shall be accompanied by an application for the admission of such person. The examination may be conducted jointly but each certifying practitioner shall execute a separate certificate.(b) Such application must have been executed within ten days prior to such admission. . .(Ellipses and emphases added). Again, Petitioner adduced no evidence that his admission to the Central New York Psychiatric Center was more than ten days before the Application for Involuntary Admission was confirmed on November 12, 2025. The record before the Court supports that Petitioner was seen and evaluated by a psychiatrist on November 4 and 5, 2025. The hospital's application, confirmed on November 12, 2025, was completed eight days after the first evaluation presumably done upon Petitioner's initial presentation at the hospital, and thus [*4]timely pursuant to the timeframe outlined in MHL § 9.27(b).[FN2]

"A person committed under section 9.27 can be retained without court authorization for up to 60 days; a court order is necessary after that, unless the patient remains in the hospital voluntarily." Rueda v. Charmaine D., 17 NY3d 522, 529 (2011), citing MHL § 9.33 (a). See also Delia, supra at 126. The "time limit for challenges to involuntary commitment to a mental hospital does not begin to run until there has been 'actual personal service of notice' on the patient . . . ."Palmer v. New York State Dept. of Mental Hygiene, 44 NY2d 958, 959 (1978)(ellipses added). The record supports that Petitioner received actual notice of his involuntary commitment on November 12, 2025. While the records in evidence state that the order of commitment expires on January 10, 2026, the Court takes judicial notice that 60 days from November 12, 2025 is actually January 11, 2026. Thus, the petition seeking court authorization for the patient's retention in the hospital needed to be filed by January 11, 2026.
Petitioner argues that the Respondent failed to file such an application within the required timeframe. He argues that it needed to be filed by January 4, 2026, relying on the contention that November 5, 2025 was the applicable date for the commencement of Petitioner's involuntary commitment. The Court has already ruled that Petitioner's involuntary commitment pursuant to MHL § 9.27 began on November 12, 2025. Accordingly, the Court must determine whether the Retention Petition was timely filed.
The parties stipulated that Respondent emailed the Retention Petition to the Court and to Petitioner's Counsel on January 9, 2026 at 5:08 p.m., eight minutes after the Court closed. Petitioner maintains that this late filing is fatal and warrants his immediate release. Respondent contends that the Retention Petition was still filed within the applicable 60-day window even though it was received outside of regular business hours.[FN3]
 Even if the Court were to conclude that the Retention Petition was filed on Monday, January 12, 2026, Respondent contends that General Construction Law § 25-a applies, making the filing timely. General Construction Law § 25-a(1) states, in relevant part,
When any period of time, computed from a certain day, within which or after which or before which an act is authorized or required to be done, ends on a Saturday, Sunday or a public holiday, such act may be done on the next succeeding business day and if the period ends at a specified hour, such act may be done at or before the same hour of such next succeeding business day, except that where a period of time specified by contract ends on a Saturday, Sunday or a public holiday, the extension of such period is governed by section twenty-five of this chapter.(Emphasis added). Petitioner's 9.27 involuntary commitment was due to expire on Sunday, January 11, 2026. Thus, the Court credits Respondent's argument that the above statute authorizes that the deadline of the act, i.e. the filing of the Retention Petition, be extended to [*5]Monday, January 12, 2026. Accordingly, Respondent, albeit cutting it close, met its obligation to file the Retention Petition within the 60-day window.[FN4]

Based upon the foregoing decision, it is hereby ORDERED that Petitioner's petition for writ of habeas corpus pursuant to CPLR Article 70 is DENIED.
Dated: February 2, 2026
ENTERED:
Hon. Rachel E. Tanguay, JSC

Footnotes

Footnote 1:Petitioner sought to introduce Exhibit B into evidence, but did not have a witness available to lay the appropriate foundation, nor did he offer a certified copy of the record which would have been admissible pursuant to the CPLR 4518. Petitioner argued that Exhibit B, purported to be one page from RPC's hospital record, could be admitted to evidence on the basis that the Respondent had supplied that record directly to Petitioner; however, the Court had to remind Counsel that evidence must still be offered in competent form to be admissible at an evidentiary hearing, regardless of who provided it to whom.

Footnote 2:If Petitioner had offered competent evidence that he was first presented to the hospital before November 2, 2025, then the Court would conclude that the MHL § 9.27 application was late.

Footnote 3:The Court notes that the Petitioner received a notice of the Retention Petition by personal delivery on January 2, 2026, and such notice was mailed to Petitioner's counsel on that same date, providing notice one week before the filing of the Retention Petition.

Footnote 4:The Court held a separate hearing on the Retention Petition on January 30, 2026 and despite repeatedly expressed concerns articulated by Petitioner's counsel that the Court would be biased or influenced by that testimony on the merits in considering this application, the Court maintains that it has NOT considered any testimony about Petitioner's actual mental health status in deciding this application. Instead, the Court reaches its determination based upon the scant record created in this proceeding and relevant, applicable law.